CLARENCE E. McMANUS, Judge.
|20n August 4, 2005, Crescent City Motors, Inc. (CCM) filed a Petition for Breach of Contract or Alternatively, Rescission of Sale for Non-Payment alleging that it sold two cars to defendants, Rafael Rafidi and Preferred Motors, Inc., (Rafidi) and that defendants failed to remit the purchase price. After trial on the merits, the trial court rendered judgment dismissing plaintiffs petition with prejudice. Plaintiff appeals.
Patrick Voss, who was Vice President and CFO of CCM at the time of the sales, testified that in October and November of 2002, CCM sold two cars to Rafidi, who resold them. In 2003, as a part of its closing process, CCM conducted an accounting of all its business transactions and discovered that CCM’s records did not show that Rafidi had paid CCM for the cars. He contacted Rafidi about the cars via three demand letters. Rafidi did not provide sufficient proof of payment, since he did not provide cancelled checks matching the purchase price of the vehicles or receipts. The selling price of the first vehicle, a GMC Yukon, was |a$19,000 and the selling price of the second vehicle, a Chevrolet Model Z71, was $16,300.
Thereafter, Voss received a letter from Rafidi who stated that he paid for the cars, as evidenced by the transfer of title. In the letter, Rafidi said that his bill of sale and titles were receipts. He further stat *1172 ed that he was puzzled as to how Voss thought that he could have gotten the titles without paying for the vehicles.
Voss admitted that the permanent records on both of the vehicles were missing, and that it was very unusual for records like that to be missing. However, it was not impossible for Rafidi to obtain the vehicles without paying them, because on occasion vehicles would be let out without payment. Voss also stated that when Crescent City Motors, LLC enters into a sale of a used vehicle it created a buyer’s order, which is a transfer between the buyer and the seller. It could not produce the buyer’s orders in this case because the permanent files were missing. The only evidence produced at trial to show the sale of the vehicles was a page from an internal ledger, which reflected the transfer, but did not state that the vehicles had been paid for.
Rafael Rafidi testified that he was in the business of buying and selling used cars. Rafidi testified that he started his own business when he formed Preferred Auto Sales, Inc. in 1998, and that over the course of his dealings with CCM, he probably purchased around 200 vehicles. In the normal course of business, when he purchased a vehicle from a dealer he would accept the vehicle at the time of sale. His ordinary process was to visit the dealerships and find the cars he wanted, and negotiate a price with the dealership. They would write a bill of sale with all relevant information, and he would take possession of the vehicle. At some later point, the title clerk of the dealership would call him, and he would returned to the dealership, make payment for the cars and pick up the titles. The time between |4taking possession of the car and getting the title was at least one month, and sometimes longer.
Rafidi stated that during the normal course of his business dealing with CCM, he would not receive a receipt for payment. Rafidi further testified that his records were destroyed during Hurricane Katrina, so he had no current records of the transactions at issue.
Rafidi testified that, concerning these two vehicles, he did receive the titles from CCM.
Leona Hopkins testified that she was a Special Projects Coordinator for Blessey Marine (the management company for CCM). She became involved with the transaction between CCM and Rafidi while she was researching during the closing process of the dealership, and could find no record of payment for the two vehicles. She further testified that payment was ordinarily made when title was transferred, and she did not know of any arrangement that CCM had with any buyer that would allow vehicles to be given to the buyer without payment. Ms. Hopkins testified that she researched approximately a dozen vehicles during the closing of Crescent City Motors, not just those of Rafidi. In each of those cases, the person had the title, but had not paid for the vehicles.
Godual Martinez, who is a notary public and owns EFS Auto Title Company, was qualified as an expert on practices within the industry of auto title transfers. He stated that he does not transfer titles for his dealer customers unless the vehicle has been paid for, and he has received some kind of proof of payment. The standard procedure is that the customer comes in with a bill of sale, signed by the seller. They take the title and reassign it to the new owner, who subsequently receives the license plate and registration. They do not release the title without notification that there has been payment. On the titles at issue, it appears that the ^notary did the reassignments, however the signa *1173 ture was unclear and it was impossible to determine who that notary was.
Robert Hale, who owns an auto brokerage and is a buyer consultant, was Rafidi’s business partner as of December 2002. At that time, Rafidi already had another, established used car business, which purchased the two vehicles. In his years in the auto industry, he has never known a dealer to transfer title to a vehicle to a used car dealer without collecting the purchase price prior to the transfer. The title clerk or the person who assigns titles is responsible for collecting the funds at the time of the delivery of title.
At the end of trial, the court found that plaintiff failed to carry its burden of proving that Rafidi or Preferred Motors, Inc. did not pay for the vehicles. The court indicated that he understood that COM had lost the paperwork. However, he stated that he did not see one piece of paper, other than an internal general ledger, that shows amounts owed. There was nothing to show the act of sale, the price, if there was financing. The court then stated that “So that leaves me with a real hard problem of saying that it’s been proven that the amount is owed.” The court found for the defendant and dismissed plaintiffs claim.

ANALYSIS

In this appeal, COM alleges that the trial court erred in finding that Rafidi paid for the vehicles absent any “actual” proof and that the trial court erred in stating that the purchase price was not established.
The standard of review by an appellate court of a district court’s findings of fact is well known. The district court’s factual findings may not be set aside in the absence of manifest error or unless they are clearly wrong. Where there is a conflict in the testimony, inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. In order to reverse a district court’s determination of a fact, a reviewing court must review the record in its entirety and (1) find a reasonable factual basis does not exist for the finding, and (2) further determine the record establishes the factfinder is Rclearly wrong or manifestly erroneous. The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether the factfinder’s conclusion was a reasonable one.
White v. American Intern. Group, Inc., 08-1238 (La.App. 5 Cir. 3/24/09), 11 So.3d 21, 23.
A proper review of the record cannot be completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court. There must be a further determination that the factfinder’s conclusion is reasonable in light of the entire record. White, supra at 23, citing Ambrose v. New Orleans Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216, 220.
In a civil case, Louisiana courts require a plaintiff to fulfill his or her burden to prove a prima facie case. Fauntleroy v. Rainbow Marketers, 04-926 (La.App. 3 Cir. 11/10/04), 888 So.2d 1045. In ordinary civil actions, the plaintiff, in general, has the burden of proof and must prove the facts in issue by a preponderance of the evidence and not by some artificially created greater standard. Talbot v. Talbot, 03-0814 (La.12/12/03), 864 So.2d 590, 598. Proof by a preponderance of the evidence is defined as taking the evidence as a whole, the fact to be proved is more probable than not. White, supra.
*1174 According to the forgoing, it was plaintiffs burden of proving, by a preponderance of evidence, that Rafidi had not paid for the cars. To meet its burden, CCM introduced a page from its accounts receivables schedule in its books. There was no testimony by the person(s) who dealt with Rafidi at the time of the sales. CCM’s exhibit was admitted through the testimony of Patrick Voss, CFO, who said he became aware of the issue in 2003, and who did not testify as to any personal recollection or knowledge of the transaction. Voss stated that it was determined that Rafidi had not paid for the vehicles because CCM records failed to 17show payment. In addition, Voss admitted that permanent files of these two vehicles, including the buyer’s orders, were missing from its files.
Rafidi testified that it was his belief that he had paid for the autos at the time of transfer of title, either by cash or by check, as was customary within the industry. He further stated that had he not paid for the vehicles, he would not have been able to take title. He introduced the testimony of two experts concerning what constituted standard industry practice. Finally, he stated that he did not have records of these transactions because they had been destroyed during Hurricane Katrina.
As we stated supra, the issue before us is not whether the trial court was right or wrong, but whether its conclusion was a reasonable one. The trial court apparently found that CCM did not prove that Rafidi did not pay for the vehicles. Our review of the record before us reflects that the trial court was not manifestly erroneous or clearly wrong in this determination.
Defendants alleged via exception of no cause of action that plaintiffs had improperly named them in the petition. That exception was orally denied at trial at the conclusion of plaintiffs case. While defendant/appellees address this issue out of an abundance of caution in their appellee brief, they failed to file an answer to the appeal, and therefore could not raise the issue. LSA-C.C.P. art. 2133. However, since we find that the trial court did not err in finding plaintiff did not meet its burden of proof, and in dismissing plaintiffs action, this issue is moot.
For the above discussed reasons, we affirm the decision of the trial court. All costs are assessed against appellant.

AFFIRMED.