DREW, J.
| jPamela Hillidge appeals a judgment classifying certain assets of William Holcomb, Sr.’s estate, as belonging to the community of Holcomb and his surviving spouse, Barbara Holcomb.
We affirm.
FACTS
William Holcomb (‘William”) died on August 7, 2010. He and Barbara Holcomb (“Barbara”) were estranged at the time.
William had executed his last will and testament on November 24, 2008. William named Pamela Hillidge (“Hillidge”) as the executrix of his estate, and he made bequests to his son, Hillidge, and Barbara.
William wrote in his will that he had certain unmatured CDs in his name and/or the name of Barbara, and that the CDs had been purchased with his separate, inherited funds. He further wrote that it was his intention to have the CDs changed solely to his name when they matured. He bequeathed 1/3 shares of the CDs each to his son, Barbara, and Hillidge.
Barbara opposed the probate of the will. She alleged that: (i) William had become delusional from cancer treatments; (ii) he had ordered her from the family home; (iii) Hillidge began a relationship with William and moved into the home;[1] (iv) Hil-lidge had unduly influenced William; and (v) William had lacked testamentary capacity when he executed the will.
In spite of Barbara’s objections, the will was probated and Hillidge was confirmed as testamentary executrix. Hillidge was ordered to file a detailed descriptive list.
| ¡¿Barbara objected to Hillidge’s final detailed descriptive list and accounting. She contended that the only separate property belonging to William at the time of his death was certain real property that he had inherited.
When Barbara filed her traversal of the final detailed descriptive list, she rejected items listed as separate movable property and claimed they belonged to the community. The parties were able to come to an agreement at trial on the classifications of some items. However, remaining in dispute were a bush hog, tractor, pistol, and the contents of accounts at Regions Bank and Minden Building and Loan (“MBL”). The accounts at Regions bank were checking account numbers xxxx3876[2] and xxxx9835.[3] The account at MBL was account number xxxx8363.[4]
William inherited $78,853.97 from a relative as evidenced by a check dated October 26, 1999. Hillidge testified that this money was deposited into a Hibernia account. As shown by a Hibernia bank statement, William opened an account at Hibernia on October 29, 1999, with a deposit of $78,853.97. According to Hillidge, she accompanied William to the bank when he deposited the inherited funds. As of January 5, 2000, the account had a balance of $79,496.77.
Hillidge testified that William withdrew $50,000 from the Hibernia account and purchased a CD. A CD prematurity notice for account number xxxx2893 at Regions Bank showed a CD with a maturity date of July 15, [¡¡2010, and a term of 303 *266 days. The CD had an anticipated renewal value of $50,664.32. The account was in William’s name, POD to Hillidge and his son. Hillidge stated that this CD was negotiated and the funds were moved in July of 2010 to an account that she and William had in their names, presumably Regions account number xxxx3876,[5] and those funds were later moved to a succession account. She said she was present when all those transactions took place.
Hillidge testified that she was also present when William allegedly spent the remaining balance in the Hibernia account on some of the other items she classified as separate property, including the purchase of a CD at MBL that was worth approximately $13,000.
A record from MBL showed that Holcomb purchased a CD for $13,484.12 on October 20, 2009, for account number xxxx8363. The CD had an initial term of six months, and it was POD to Hillidge, Barbara, and the son. The CD was redeemed in 2010. Following William’s death, Hillidge closed the account and split the funds three ways.
The trial court noted Hillidge’s testimony that funds from the Hibernia account were used to purchase the $50,000 CD at Regions and the $13,484 CD at MBL, but she had no documents to support that assertion. While the court agreed that the money deposited into the Hibernia account was William’s separate property, Hillidge failed to meet her burden of proving those funds were then used to purchase the tractor, bush hog, gun, and the two CDs.
I/The court also noted that there was no evidence as to the source of the funds in Regions account number xxxx9835; therefore, those funds were also classified as community property. Hillidge used funds in this account to pay some of William’s bills after his death. This account was classified as community property on the final detailed descriptive list.
The trial court ordered the disputed items and funds classified as community property for purposes of the succession. Hillidge appealed.
DISCUSSION

Burden of proof

Things in possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property. La. C.C. art. 2340. The level of proof or persuasion required to overcome this presumption is not found in art. 2340. Talbot v. Talbot, 2003-0814 (La.12/12/03), 864 So.2d 590.
Hillidge argues that the trial court applied the wrong burden of proof in this matter. The trial court correctly stated that the burden of proof to overcome the presumption of community is preponderance of the evidence. However, the court next cited Lormand v. Lormand, 96-62 (La.App. 3d Cir.5/8/96), 673 So.2d 1345, writ denied, 96-1432 (La.9/13/96), 679 So.2d 109, as holding that to meet this burden, proof must be clear, positive, and legally certain that the property was separate instead of community. The court later stated that Hillidge had not shown with clear, positive, and legally certain proof that the CDs were William’s separate property.
| (¡In Talbot, the supreme court rejected a requirement of clear and convincing evidence to overcome the art. 2340 presumption:
As a matter of public policy and in the interest of fairness, we find that the *267 community presumption contained in article 2340 is rebuttable by either spouse upon a showing by a preponderance of the evidence the separate nature of property brought into the community.
Id. at p. 12, 864 So.2d at 600. Emphasis added.
The trial court mentioned the preponderance of the evidence standard, but then it required that the proof be clear, positive, and legally certain. That level of proof was likened to clear and convincing by the supreme court in Talbot:
Through the years, however, the lower courts have repeated the formula ... requiring a spouse to prove the separate nature of his or her property by a “strict, clear, positive and legally certain” standard, or stated more traditionally, the clear and convincing standard.
Id. at p. 10, 864 So.2d at 598.
The Third Circuit in Lormand had cited another Third Circuit case, Hebert v. Hebert, 94-864 (La.App. 3rd Cir.2/15/95), 650 So.2d 436, for the statement that the proof to meet the burden of overcoming the art. 2340 presumption must be clear, positive, and legally certain. The Hebert court had stated that clear and convincing evidence must be presented to overcome the presumption of community. This approach was clearly rejected by the supreme court in Talbot.
Holding Hillidge to a heightened burden of proof was legal error by the trial court. If a legal error by the trial court interdicts the fact-finding process, the manifest error standard of review is no longer applicable, and, |fiif the record is otherwise complete, the appellate court should conduct an independent de novo review of the record. Chambers v. Village of Moreauville, 2011-898 (La.1/24/12), 85 So.3d 593. This error was possibly prejudicial to Hillidge as it skewed the finding that her proof was insufficient to overcome the burden. Accordingly, we conduct a de novo review of the evidence.

Evidence

Even after conducting a de novo review of the record, we reach the same conclusion that Hillidge failed to meet her burden of proof to overcome the presumption.
Hillidge testified that she knew the money he put into the CDs was William’s separate property because she had helped him with his financial affairs since the 1980s. However, Hillidge, who was employed in financial statement services at Regions Bank in Minden and said she was authorized on all of William’s accounts, was unable to present any documentation showing how the money he had inherited was moved from the Hibernia account to the CDs in the Regions and Minden accounts over the course of nine years.
We also note the language in William’s 2008 will that he had certain unmatured CDs in his name and/or the name of Barbara, and that the CDs had been purchased with his separate, inherited funds. The $50,000 CD had a maturity date of July 15, 2010, and a term of 303 days. The $13,484.12 CD was purchased on October 20, 2009. It is unclear as to which CDs William was referring in his will, and this uncertainty further 17clouds an ascertainment of the source of the funds for the $50,000 and $13,484.12 CDs.
Hillidge was also unable to establish that the tractor, bush hog, and gun were purchased by William with his separate funds.
DECREE
At appellant’s cost, the judgment is AFFIRMED.

. Hillidge described the nature of her relationship with William as "family.”

. This account contained $51,918 on the date of William's death.

. This account contained $1,904 on the date of William’s death.

. This account contained $13,484 on the date of William’s death.

. Hillidge testified that she had placed $700 of her own money in this account.