MAX N. TOBIAS, JR., Judge.
| T Barb ara Gail Samuel Bretz (“Barbara”) appeals the trial court’s judgment holding that a 30 July 1998 act of sale validly transferred a 50% ownership interest in commercial real estate in New Orleans located at 939 South Jefferson Davis Parkway (“the Property”) from Bernard F. Samuel, Sr. (“Bernard, Sr.”) to the appel-lee, Barry N. Samuel (“Barry”). For the reasons that follow, we affirm.
This case involves the current ownership of the Property, which was originally acquired by Bernard, Sr. and his first wife, Bertha Samuel (“Bertha”), in 1963 as community property. Of Bernard, Sr.’s first marriage to Bertha, three children were born: Bernard, Jr.,[1] Barry, and Barbara.
Pursuant to an act of sale dated 30 July 1998, Bernard, Sr. sold the Property to Barry for $250,000.00, payable $200,000.00 in cash (for which the previous payments of rent for the Property was acknowledged at the time of sale as full payment thereof) [2] and the balance of $50,000.00 payable in twenty equal monthly installments of $2,500.00, without interest, commencing at the act of sale. The | ^record on appeal *1277 establishes that the 1998 act of sale in authentic form was registered and recorded, respectively, in conveyance and mortgage records of Orleans Parish on 6 August 1998. A 24 December 1995 general power of attorney naming Dorothy Jones Samuel (“Dorothy”), Bernard, Sr.’s second wife, as Bernard, Sr.’s attorney-in-fact was also registered and recorded in the conveyance and mortgage records on that date with the act of sale.
Barry’s sister, Barbara, contends the sale of the Property was invalid for lack of consideration and because the general power of attorney used in the transaction was executed at a time when Bernard, Sr. was mentally incompetent. Barbara further contends that while the act of sale purported to transfer a 100% interest in the Property to Barry, at the time of the sale, Bernard, Sr. only owned a 50% undivided interest in the Property. The remaining 50% interest was co-owned in indivisión by Barry, Barbara, and the surviving children of Bernard, Jr.[3]
In April 2001, Bernard, Sr. died testate, leaving a 1994 statutory will naming Barbara and Barry as co-trustees and Barry as executor. Bernard, Sr.’s statutory will provided for one-third of his estate to go to Barry, and the balance to be placed in trust for Barbara and the children of Bernard, Jr. Bernard, Sr. also left an olo-graphic 1995 will favoring his second wife, Dorothy (“Dorothy”).. In a 29 May 2008' judgment, the olographic will was declared null on the ground that, though | sBernard, Sr. had significant and sustained periods of lucidity, he lacked testamentary capacity.[4] Thereafter, the 1994 statutory will was probated.
On 26 April 2010, Barry and Barbara jointly filed a petition for possession, to which was attached a verified affidavit signed by them, recognizing that the only asset remaining in Bernard, Sr.’s succession was the Upstream Shopping Center, another parcel of real estate. The petition further recognized that all of the assets that existed at the time of Bertha’s death were liquidated with the exception of the remaining interest in the Uptown Shopping Center.[5] Thus, Barbara acknowledged under oath the previous transfer of the Property by Bernard, Sr.
On 30 April 2010, Barbara filed a petition to annul the judgment of possession on the basis that Barry failed to file a final accounting.[6] Thereafter, a final accounting was prepared and filed. No objection to the final accounting is contained in the record on appeal.
*1278 On 14 June 2010, Barbara filed a motion to traverse the sworn descriptive list and to supplement and amend the judgment of possession alleging that both documents failed to include Bernard, Sr.’s 50% interest in the Property and that the Property, therefore, remained an unpartitioned asset of Bernard, Sr.’s estate. Barbara also filed a notice of lis pendens.
|Jn a separate action, Barbara by petition sought to rescind the 1998 act of sale of the Property by Bernard, Sr. to Barry on the grounds the purported sale was invalid and, thus, the Property legally belonged to the successors of Bertha and Bernard, Sr. in accordance with their respective wills.[7] Thereafter, Barry filed a motion for summary judgment seeking to dismiss Barbara’s petition to rescind the sale of the Property, an exception of acquisitive prescription, and an exception of no right of action as to Michael Bretz, Barbara’s son, who joined his mother in her motion to traverse.[8] Barbara then moved for summary judgment seeking to have the 1998 act of sale declared invalid.
The trial court granted Barry’s motion for summary judgment, in part,[9] holding that Barry, Barbara, and the three children of Bernard, Jr., were the co-owners of Bertha’s 50% interest in the Property,[10] and that Barry was the owner of the remaining 50%, having validly purchased Bernard, Sr.’s 50% in the Property prior to his death.[11] In holding that the sale of the Property was valid, the trial court determined that because the act of sale was properly recorded at the time of purchase, just title to Bernard, Sr.’s 50% interest in the Property transferred to Barry. Further, because Barry held just title and maintained uninterrupted possession of the Property in good faith for ten years, the court held that acquisitive prescription applied and Barbara’s claim to rescind the 1998 sale was | ¿untimely. Regarding the power of attorney, the court, in oral reasons for judgment, stated:
I don’t think [the power of attorney] is relevant because Barry Samuel isn’t here claiming a prescription as a good-faith possessor. But even if he were, there’s nothing in the record to show that Mr. Samuel was not in good faith, even if Dorothy Samuel had obtained that power of attorney by duress or Bernard Samuel was somehow incapacitated when he executed it. I don’t think there’s any evidence to show that Mr. Samuel was in bad faith. He clearly bought the property in good faith. I don’t think it’s relevant... ,[12]
*1279 Barbara suspensively appealed the judgment. Barry neither appealed nor answered Barbara’s appeal.
Barbara assigns six errors allegedly committed by the trial court; however, the parties agree that the central issue on appeal is whether the purported 30 July 1998 act of sale validly transferred title of the Property to Barry. Specifically, Barry claims that the act transferred Bernard, Sr.’s 50% ownership interest in the Property to him.[13] Contrariwise, Barbara contends that the act was invalid and transferred no title whatsoever. Because we conclude that the 1998 act of sale was a valid sale and legally transferred Bernard, Sr.’s 50% interest in the Property to Barry prior to Bernard, Sr.’s death, with the remaining 50% interest being co-owned one-third of one-half each by Barry, Barbara, and Bernard, Jr.’s three |fichildren, for the reasons that follow, we affirm the trial court’s granting of summary judgment and pretermit discussion of the remaining issues raised by Barbara relative to ten-year acquisitive prescription and donation in disguise.
An appellate court reviews the trial court’s grant or denial of a motion for summary judgment de novo using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. La. C.C.P. art. 966; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Based upon our de novo review of the record in this case, we find the evidence supports a finding in favor of Barry as the legal owner of Bernard, Sr.’s 50% interest in the Property and, thus, affirm the trial court’s granting of summary judgment, in part, but on different grounds.
Specifically, we find that La. R.S. 9:5647 is dispositive as to the validity of the 1998 act of sale in this case. It provides:
A. Any action to set aside a document or instrument on the ground that the party executing the document or instrument under authority of a power of attorney was without authority to do so, or that the power of attorney was not valid, is prescribed by five years, beginning from the date on which the document or instrument is recorded in the conveyance records, or the mortgage records if appropriate. Nothing contained in this Section shall be construed to limit or prescribe any action or proceeding which may arise between a principal and the person acting under authority of a power of attorney.
B. The prescriptive period established by Subsection A of this Section shall be retroactive and shall apply to all such documents whether recorded prior to or after August 15, 2008; however, as to any documents recorded prior to August 15, 2008, as to which prescription has not already run and become final, the prescriptive period established by Subsection A of this Section shall become final and complete ten years from the date the document was recorded or August 15, 2013, whichever occurs first.
| 7In the case at bar, Barbara seeks to set aside the 1998 act of sale on the ground *1280 that the power of attorney used by Dorothy to convey the Property to Barry was invalid because Bernard, Sr. was mentally incompetent when he signed the procuration and, therefore, lacked capacity in 1995 to execute it. Specifically, Barbara contends that, as the court found in the 2002 succession proceedings when it declared Bernard, Sr.’s olographic will invalid based upon his lack of mental capacity, the evidence suggests that Bernard, Sr.’s mental condition increasingly declined during 1995 such that by December 1995, when Bernard, Sr. granted Dorothy the general power of attorney, Bernard, Sr.’s mental capacity was worse than it had been in February 1995 when the olographic will was executed. Barbara urges that Barry knew his father lacked mental capacity in December 1995 when he executed the general power of attorney as evidenced by the pleadings Barry filed in the prior succession proceedings asserting his father’s mentally incapacity to execute the olo-graphic will and also attacking Dorothy’s use of this same power of attorney to divert other assets to herself contrary to his father’s interests. Further, Barbara contends that Barry knowingly took title to the Property in bad faith because he knew Dorothy was acting contrary to Bernard, Sr.’s intentions when she sold him the Property using the power of attorney.[14] Accordingly, Barbara claims that because the power of attorney used to effectuate the sale was invalid due to Bernard, Sr.’s lack of mental capacity to execute the document, then the act of sale was likewise defective to transfer valid title to the Property to Barry. We disagree.
lsThe record evidence establishes the 1998 act of sale was in authentic form and was properly registered and recorded, respectively, in the conveyance and mortgage records of Orleans Parish in August 1998, along with the power of attorney. Barbara did not file any action to rescind or otherwise set aside the sale until 2010. By the express provisions of La. R.S. 9:5647, Barbara’s claim to set aside the sale on the ground that the power of attorney was invalid was prescribed in August 2008, five years from the date the act of sale was recorded and/or registered.[15] Accordingly, we find the 1998 act of sale validly transferred title to Bernard, Sr.’s 50% interest in the Property to Barry.
Barbara additional contention that the act of sale should be set aside because, despite a stated consideration of $250,000.00 in the act, no money ever changed hands between Barry and Dorothy as Bernard, Sr.’s agent. We disagree.
Consideration[16] is an essential element in the sale of immovable property. La. C.C. art. 2464 provides:
The price must be fixed by the parties in a sum either certain or determinable through a method agreed by them. There is no sale unless the parties intended that a price be paid.
*1281 The price must not be out of all proportion with the value of the thing sold. Thus, the sale of a plantation for a dollar is not a sale, though it may be a donation in disguise.
In the instant case, the parties agreed upon a fixed price of $250,000.00 for the Property. The act of sale provides in pertinent part:
| .This sale is made and accepted for and in consideration of the price and sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 ($250,000.00) DOLLARS, in part payment and deduction whereof the said Purchaser has well and truly paid, in ready and current money the sum of TWO HUNDRED THOUSAND AND NO/100 ($200,000.00) DOLLARS to the said Vendor who hereby acknowledges the receipt thereof, and grants full acquittance and discharge thereof. And for the balance of said purchase price to wit: the sum of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS, that amount shall be payable in twenty (20) equal monthly installments in the amount of TWO THOUSAND FIVE HUNDRED AND NO/100 ($2,500.00) DOLLARS each per month until said amount is paid in full.
After the parties agree upon the price, a separate and distinct issue arises: the discharge of the buyer’s obligation to pay the price. La. C.C. art. 2549. The price may be paid on the day of the transfer or at some later date. La. C.C. art. 2550. Interest on the unpaid price may or may not be stipulated according to the will of the parties. La. C.C. art. 2553. The term of payment given by the seller to the buyer and the provisions for interest or lack thereof do not make the purchase price uncertain. To hold otherwise would contradict the plain terms of La. C.C. art. 2464. See generally, Guerin v. Guerin, 449 So.2d 1053 (LaApp. 1st Cir.1984).
In the instant case, Barbara disputes the stated consideration in the act as actual consideration sufficient to transfer title because the transaction did not provide any benefit to Bernard, Sr. or to his succession. The act acknowledges $200,000.00 of the $250,000.00 purchase price as paid. Specifically, Dorothy gave Barry credit for $200,000.00 in rental payments that Barry previously paid to Bernard, Sr. under an oral lease of the Property. The remaining $50,000.00 to be paid in twenty equal monthly installments, according to Barbara, consisted of an obligation that Barry already owed to Bernard, Sr. pursuant to the terms of the oral h please of the Property to pay the monthly rent. Accordingly, because no new benefit was conferred upon Bernard, Sr. in the act of sale of the Property, Barbara contends that the sale was invalid. We disagree.
In Louisiana, our law recognizes that previously paid rent (e.g., rent-to-own) is appropriate consideration for an act of sale of immovable property. See Zeller v. Webre, 09-45 (LaApp. 5 Cir. 5/26/09), 17 So.3d 55; see also Bennett v. Porter, 10-1088 (LaApp. 3 Cir. 3/9/11), 58 So.3d 663. Further, even if we were to assume, for the sake of argument, that the $200,000.00 credit given for past rents paid did not constitute valid consideration, it is undisputed that Barry paid the remaining $50,000.00 credit portion of the sale to Bernard, Sr. as contemplated by the act of sale.[17] We find this was sufficient consideration for the purchase of Bernard, Sr.’s 50% interest in the Property that he conveyed to Barry.
*1282 Accordingly, our de novo review of the appellate record supports the trial court’s granting of summary judgment in favor of Barry finding him to be the valid owner of his father’s 50% interest in the Property. Accordingly, we affirm the trial court’s ruling.

AFFIRMED.

. Bernard, Jr. died in April 1977, predeceasing both of his parents, and was survived by three minor children: Gary R. Samuel, Christopher N. Samuel, and Steven D. Samuel.

. Barry had been leasing the Property for $2,500.00 per month from Bernard, Sr. since the 1970s.

. Bertha died testate in February 1990, leaving her community share, including her undivided 50% interest in the Property, in trust to Barry and Barbara and to the children of her deceased son, Bernard, Jr. Barry and Barbara each owned one-third, and Bernard, Jr.’s children owned the remaining one-third. That trust was subsequently terminated.

. Ultimately, a Settlement and Release Agreement was executed between Dorothy and the family whereby Dorothy surrendered any interest in Bernard, Sr.’s succession in return for an annuity.

. The record reflects that the Uptown Shopping Center was purchased by Bernard, Sr. and Bertha in 1972. According to Barry, his parents used their retained earnings in the amount of $240,000.00 from a family-owned company; B. Samuel Co., Inc., as a down paymént for the purchase price of the shopping center. Further, Barry claims, and Barbara does not dispute, that both Barbara and Bernard, Jr. had previously received their respective shares of the buyout of B. Samuel Co., Inc., while Barry received no monies or cash equivalents for his portion, his share having been used by his parents to purchase the shopping center.

.In the judgment of possession dated 26 February 2010, as the independent testamentary executor and co-trustee of the Bernard, Sr. testamentary trust, Barry was "discharged and relieved from the obligation of making accountings, including the final accounting, to the legatees.”

. This action was filed on 30 December 2010, in proceedings captioned: "Barbara S. Bretz v. Barry N. Samuel,” number 2010-13143 on the docket of the Civil District Court. Barry filed a motion to consolidate and transfer the proceeding with the instant proceeding, which was done.

. Barry also filed a rule to show cause why the notice of lis pendens previously filed by Barbara should not be dismissed and why Barbara should not be removed as co-trustee of the testamentary trust established by Bernard, Sr. in his will.

. Barry asserted full ownership of the Property by virtue of the 1998 act of sale, but the trial court determined that Bernard, Sr. only owned a 50% interest in the Property and therefore, this was all that Bernard, Sr. was capable of conveying in the 1998 act of sale.

. See footnote 3 above.

. In doing so, the court granted, in part, Barbara’s petition to rescind the sale of the Property, insofar as the judgment recognized Barbara, Barry, and the children of Bernard, Jr. as owners of Bertha’s 50% interest in the Property.

. The trial court also denied Barbara’s motion for summary judgment, in addition to denying her motion to traverse the sworn descriptive list and to supplement and amend the judgment of possession. Further, the court dismissed Barbara's notice of lis pen- *1279 dens with prejudice and granted Barry's exception of no right of action with respect to the claims of Michael Bretz. Barry's motion to remove Barbara as testamentary co-trustee of the trust established by Bernard, Sr.’s will was continued without date.

. While Barry originally claimed that the 1998 act of sale transferred full ownership of the Property to him, on appeal, he concedes that "the decisions of the trial court (i.e., finding him to be the owner of his father's 50% interest and an equal co-owner of his mother’s 50% interest) are correct and should be sustained on appeal.”

. According to Barbara, Bernard, Sr.’s intention relative to the sale of the Property— which intention she claims were known to Barry — was that Barry could purchase the Property after Bernard, Sr.’s death at fair market value.

. It is apparent that La. R.S. 9:5647 was enacted to give further security and finality to titles to real estate transferred by a procuration executed by the seller. See McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909).

.Consideration is an inducement given to enter into a contract that is sufficient to render the promise enforceable in the courts. For consideration to be valid, the things exchanged must be of some legal value. In a contract for the sale of immovable property, the money paid is the • consideration for the seller, and the property sold is the consideration for the purchaser.

. Not only did the sale transfer title of the Property to Barry, but simultaneously ended the obligations of Bernard, Sr. to pay taxes, insurance, et cetera, as well as the risks associated with ownership of real estate.