FREDERICKA HOMBERG WICKER, Judge.
|sPlaintiffs appeal the trial court judgment in favor of their deceased father’s second wife, defendant-herein. The trier-of-fact determined that defendant acquired ownership of certain property through ten-year acquisitive prescription and further denied the deceased father’s estate’s claim for reimbursement of funds from a brokerage account the estate claims was decedent’s separate property. For the following reasons, we find the trial court was correct in its findings and affirm the judgment appealed.

14FACTUAL AND PROCEDURAL BACKGROUND

William Coleman, Jr. (Mr. Coleman) was married to Stella Coleman until her death in 1972. Of that marriage, three children were born — William B. Coleman, III, Wendy Coleman LeGardeur, and Jon Keith Coleman, plaintiffs herein. In 1975, Mr. Coleman married Renate Briel Coleman *1038 (Mrs. Coleman), defendant herein, and remained married to her until his death in December of 2006.
Plaintiffs filed suit asserting a 50% ownership interest in a property (hereinafter “the Falcon Road property”) formerly owned by their father and mother, Stella Coleman, and further seeking reimbursement of sale proceeds from Mrs. Coleman’s 2008 sale of the property. Plaintiffs challenge a 1982 transaction in which their father purported to convey to Mrs. Coleman title to the Falcon Road property. Separately, William Coleman, III, in his capacity as executor of his father’s estate, filed suit for reimbursement of funds from a brokerage account (hereinafter “the Smith Barney account”) he claims the estate inadvertently distributed to Mrs. Coleman following Mr. Coleman’s death.[1]

DISCUSSION

The issues on appeal stem from the trial court’s judgment in favor of Mrs. Coleman, finding that (1) she acquired full ownership of the Falcon Road property by ten-year acquisitive prescription, and (2) the Smith Barney account was a community account and Mr. Coleman’s estate is not entitled to reimbursement for community funds previously distributed to Mrs. Coleman.[2] We address plaintiffs’ assignments of error related to the Falcon Road property and the Smith Barney account each in turn.
| ¿Falcon Road Property
Mr. Coleman and Stella Coleman purchased the Falcon Road property as their community home in 1949 and resided there until Stella Coleman’s death in 1972. In 1971, before Stella Coleman’s death, Mr. Coleman executed an act of sale transferring the property to his company, the William B. Coleman Company, Inc. In a pretrial ruling, the trial judge determined that the 1971 transfer to the company was a simulated sale. In 1976, after Stella Coleman’s death, the William B. Coleman Company transferred the property back to Mr. Coleman individually. Plaintiff, William Coleman, III, as then-President of the company, witnessed and placed his signature on this 1976 Act of Sale. The evidence presented at trial demonstrates that the Falcon Road property was not included in Stella Coleman’s succession documents, including the detailed descriptive list and the judgment of possession rendered in the Twenty-Fourth Judicial District Court.[3]
Mr. Coleman and Mrs. Coleman married in 1975. In 1982, Mr. Coleman executed an Act of Sale, transferring his rights in the property to his wife, Mrs. Coleman, for consideration in the amount of $100,000.00. On the same date, Mr. Coleman executed an Act of Donation, donating the property to Mrs. Coleman as her separate property.[4] Mr. and Mrs. Coleman resided to *1039 gether in the Falcon Road property until his death in December of 2006, with the exception of a period of time following Hurricane Katrina.
Mrs. Coleman sold the Falcon Road property to a third party in 2008 for $1,150,000.00. In 2010, Plaintiffs filed the instant litigation asserting a 50% | (-.ownership interest in the Falcon Road property and seeking reimbursement of 50% of the sale proceeds from the 2008 sale. Mrs. Coleman subsequently asserted that she acquired full ownership of the Falcon Road property through ten-year acquisitive prescription.[5]
The matter proceeded to jury trial. As to the Falcon Road property, the jury found that Mrs. Coleman possessed the Falcon Road property for a period over ten years in good faith. The jury further found that plaintiffs are estopped from asserting their claim to the property in light of their actions or inaction to assert their ownership. The trial judge subsequently determined the issue of just title, finding that the 1982 transfer conveyed valid title of Mr. Coleman’s 50% interest in the property and further conveyed just title to the remaining 50% interest in the property. The trial court entered judgment on the jury’s verdict and found that Mrs. Coleman acquired full ownership of the Falcon Road property through ten-year acquisitive prescription.
Plaintiffs appeal the trial court’s judgment, arguing that (1) the trial judge erred in determining that the 1982 transfer conveyed just title to Mrs. Coleman of their mother’s 50% interest in the Falcon Road property; (2) the jury erred in finding that Mrs. Coleman possessed the property in good faith; and (3) the jury erred in applying the doctrine of estoppel under the facts of this case — where they contend their claim to assert ownership has not yet prescribed — and further that Mrs. Coleman failed to meet her burden to prove estop-pel in this case.
We address each assignment of error related to the Falcon Road property separately below:
| tAcquisitive Prescription
Under Louisiana law, ownership and other real rights in immovable property may be acquired by the prescription of ten years. La. C.C. art. 3473. The requisites for acquisitive prescription of ten years are: possession for ten years; good faith; just title; and a thing susceptible of acquisition by prescription.[6] La. C.C. art. 3475. In this appeal, plaintiffs claim that the trial court erred in finding that Mrs. Coleman had just title of their mother’s 50% interest in the Falcon Road property and further claim that the jury erred in finding that Mrs. Coleman possessed the Falcon Road property in good faith.

Just Title

Because the trial judge determined that the 1971 transfer to the William B. Coleman Company, Inc. was a simulated sale, Mr. Coleman only had valid title to a 50% interest in the Falcon Road property at the time of the 1982 Act of Sale to Mrs. Coleman.[7] Plaintiffs argue that because *1040 the language in the 1982 Act of Sale provides that Mr. Coleman transferred all of the rights he “has or may have[,]” the 1982 Act of Sale only transferred valid title as to Mr. Coleman’s 50% interest. We agree. However, plaintiffs further contend that the 1982 Act of Sale did not convey just title to Mrs. Coleman of the remaining 50% interest — Stella Coleman’s 50% interest in the property at the time of her death.[8] For the following reasons, we disagree.
One requisite to acquiring property through ten-year acquisitive prescription is proof of just title. La. C.C. art. 3475. Just title is defined as “a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another [Rreal right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated.” La. C.C. art. 3483. Comment (b) to article 3483 clarifies that a just title is a juridical act, such as an act of sale, “translative of ownership.” (emphasis in original).
In her Reasons for Judgment, the trial judge discussed La. C.C. art. 3483 and provided the following analysis to support her judgment with regard to just title:
Specifically, the children rely on the following language contained in the 1982 Act of Sale:
“William B. Coleman, Jr.who declares that he does by these presents grant, bargain, sell, convey, transfer, assign, setover, abandon and deliver, with all legal warranties and with full substitution and subrogation in and to all of the rights and actions of warranty which he has or may have against all preceding owners and vendors..”
The children focus on the highlighted phrases. They argue since William B. Coleman, Jr. only owned the rights to % of the house, the language of the Act only transferred the rights to ¡á of the house to Renate. The court disagrees.
Civil Code Article 3483 defines “just title” as follows:
A just title is a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another real right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situate[d][sic ].
The comments to this article shed some light on interpretation of this definition. In particular, Comment (b) explains that “Just title” need not be derived from the true owner because if that were the case, prescription would have no place in our law. The law merely requires a document, which if it had been executed by the true owner, would have conveyed ownership.
Applying this rationale to the 1982 Act of Sale, the court concludes it conveyed “just title” to Renate Briel Coleman of the entire property. The language of the Act of Sale is clear and unambiguous. The document does not limit William B. Coleman, Jr.’s interests to only ¡é of the Falcon Road property, nor does it reference any co-owners. Clearly if William B. Coleman, Jr. had been the true owner of the entire property in 1982, the Act of Sale would have transferred the entire property to Renate Briel Cole *1041 man. Furthermore, the Act was written in valid form and filed in the conveyance records. Therefore, it is “just title” as defined by Civil Code Article 3483. This interpretation is consistent with the Supreme Court’s interpretation of |9“just title” in Land Development Co. of Louisiana v. Schultz [Schulz], [169 La. 1] 124 So. 125[ ] (La.1929).
This conclusion is also supported by the Comment (b) of Civil Code Article 3484. According to this comment, when a co-owner of an immovable transfers ownership of the entire immovable, the transferee acquires the undivided interest of the transferor and “just title” to the remaining parts. Thus, in 1982, Renate Coleman immediately acquired the Falcon Road property. However, because the 1982 Act of Sale did not limit Mr. Coleman’s interest to \ of the property, she acquired “just title” to the remaining part.
We agree with the trial judge’s analysis and find that the 1982 Act of Sale is a juridical act translative of title sufficient to convey valid title to Mr. Coleman’s 50% interest and just title to Stella Coleman’s remaining 50% interest.
To further support their position, plaintiffs point to two appellate court decisions, In re Succession of Samuel, 11-1511 (La.App. 4 Cir. 5/2/12), 89 So.3d 1275 and Taylor v. Taylor, 32,517 (La.App. 2 Cir. 1/6/00), 755 So.2d 341. For the following reasons, we find the two cases cited by plaintiffs are not controlling under the facts of this case.
In In re Succession of Samuel, the decedent, Bernard Samuel, was married to Bertha Samuel and three children were born of that marriage. Mr. Samuel and his first wife purchased property during the community regime. After Bertha Samuel’s death, Mr. Samuel, through a power of attorney executed in favor of his second wife, transferred the property at issue to his son, Barry Samuel. Following Mr. Samuel’s death, Barbara Samuel, Barry’s sister, sought to set aside the 1998 transaction on the ground that the power of attorney used to convey the property was invalid because Mr. Samuel lacked mental capacity at the time he executed the power of attorney. Barry subsequently filed a motion for summary judgment, asserting the validity of the 1998 act of sale. The trial court granted Barry’s motion, in part, finding that the 1998 act of sale transferred Mr. Samuel’s 50% Iminterest in the property but further found that the three children co-owned the remaining 50% interest. Barbara appealed the trial court judgment. The Louisiana Fourth Circuit stated in its opinion that Barry failed to appeal the trial court’s judgment and further indicated that Barry abandoned his argument as to just title of the remaining 50% interest on appeal by conceding to the trial court’s judgment. The Fourth Circuit affirmed the trial court’s partial granting of the summary judgment, but did so on the ground that Barbara’s claim to set aside the 1998 sale had prescribed under La. R.S. 9:5647.[9] However, the Fourth Circuit specifically stated that it “pretermit[ted] discussion of *1042 the remaining issues ... relative to ten-year acquisitive prescription.... ” In re Succession of Samuel, 89 So.3d at 1279. Accordingly, we find the Fourth Circuit in Samuel did not reach or determine the issue of just title and is thus not controlling or persuasive to the facts of this case.[10]
Plaintiffs further cite Taylor to support their position. The plaintiff in Taylor also attacked the validity of a transfer, based upon an invalid power of attorney, of her father’s interest in a property. The property at issue in Taylor was inherited by nine individuals and plaintiffs father’s interest was clearly set forth in a judgment of possession rendered in connection with a succession. Therefore, the nine heirs clearly co-owned the property. In dicta, the Louisiana Second Circuit states that the deed, which did not specify the percentage of plaintiffs father’s interest in the property, only transferred his interest in the property and did not transfer just title Into the remaining hems’ interests. However, the primary issue before the court in the Taylor case was whether plaintiffs claim to attack the validity of the power of attorney, allegedly executed with lack of mental capacity, had prescribed.[11] We find the Taylor case, in which a judgment of possession[12] clearly reflected that plaintiffs father only owned an undivided interest in the property and where the primary issue before the court was whether plaintiffs claim to attack the validity of a power of attorney had prescribed, is distinguishable and not applicable under the facts of this case.
Accordingly, we find the 1982 Act of Sale to Mrs. Coleman contained language sufficient to transfer valid title to Mr. Coleman’s 50% interest in the property and just title to the remaining 50% interest.

Good Faith

To acquire immovable property through ten-year acquisitive prescription, a party must also prove possession, in good faith, for a period of ten years. La. C.C. art. 3475. The jury found that Mrs. Coleman possessed the Falcon Road property for a period of ten years and in good faith. Plaintiffs do not dispute the jury’s finding of possession. However, plaintiffs assign as error the jury’s finding that Mrs. Coleman was in good faith. For the following reasons, we find the evidence presented at trial supports the jury’s verdict finding that Mrs. Coleman possessed the Falcon Road property in good faith.
Plaintiffs argue that the jury erred in finding Mrs. Coleman in good faith primarily because: (1) plaintiffs contend that a “family meeting” was held after Mr. and Mrs. Coleman’s marriage wherein the ownership of the Falcon Road property was discussed and Mrs. Coleman was informed that the children owned 50% of the *1043 112property; and (2) the evidence shows that Mrs. Coleman purchased title insurance days after Mr. Coleman’s death, evidencing her knowledge of plaintiffs’ property interest and her bad faith.
With regard to the family meeting, plaintiffs each testified that a family meeting was held at the Falcon Road property shortly after Mr. and Mrs. Coleman married. Plaintiffs each testified that Mr. Coleman, Mrs. Coleman, plaintiffs, and Mr. Coleman’s brother, Jimmy Coleman, attended the meeting and that the purpose of the meeting was to discuss the ownership of the Falcon Road property. Plaintiffs testified that, at that meeting, Jimmy Coleman, the family attorney, explained to Mrs. Coleman and plaintiffs that plaintiffs owned a 50% interest in the home, which they received from their mother’s succession. Mrs. Coleman, on the other hand, testified that she recalled a family meeting taking place shortly after she married Mr. Coleman, but the purpose of the meeting was to smooth over the relationship between plaintiffs and Mrs. Coleman because the relationship was like “ice.” Mrs. Coleman testified clearly that no one ever informed her that the children had any ownership interest in the Falcon Road property, and that her husband repeatedly explained to her that he wished for his children to inherit the William B. Coleman Company, Inc. and for her to have the house. Mrs. Coleman testified, and evidence was introduced to indicate, that Mr. Coleman’s brother, Jimmy Coleman handled the documentation for the 1982 Act of Sale and the 1982 Act of Donation transferring the property to Mrs. Coleman.[13] She testified that, at the time she executed the Act of Sale and Act of Donation, Jimmy Coleman never explained to her that the children may have had any ownership interest in the property. Mrs. Coleman explained that Mr. Coleman’s actions led her to believe that he owned 100% of the Falcon Road property. Further, Mrs. Coleman testified |13that she often referred to the Falcon Road property as her home and that, when she did ask the children-plaintiffs to leave her home, they complied and never responded that they too had an ownership interest in the property. The jury clearly believed Mrs. Coleman’s testimony and did not accept plaintiffs’ testimony that Mrs. Coleman had been informed of the childrens’ interest in the property.
Regarding the purchase of title insurance, the record reflects that title insurance was purchased days after Mr. Coleman’s death. Mrs. Coleman testified that, following Mr. Coleman’s death, Jimmy Coleman purchased a policy of title insurance in Mrs. Coleman’s name and explained to her that it was a standard precaution to protect her property following Mr. Coleman’s death. Plaintiffs contend that this purchase of title insurance proves that Mrs. Coleman knew of plaintiffs’ ownership interest in the property and shows her possession in bad faith. However, Mrs. Coleman testified that the insurance policy was purchased without her knowledge by Jimmy Coleman and further that, had she known that the children would assert any ownership claim, she would not have sold the property to a third-party until the dispute had been resolved. The jury believed Mrs. Coleman’s testimony and found her to be a good faith possessor.
In her Reasons for Judgment, the trial judge found:
[C]ontrary to Plaintiffs’ assertions, ample evidence offered at trial supports the jury’s finding [of good faith]. Mrs. Coleman testified she believed her husband gave her the house as a gift and *1044 that she always believed her husband owned 100% of the property. His actions and the actions of Plaintiffs led her to believe he owned 100% of the property....
When findings of fact are based on the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings. Salassi v. Salassi, 08-510 (La.App. 5 Cir. 5/12/09), 13 So.3d 670, 675; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Upon review of the record and consideration of the deference given to the jury in the factual determination of good faith, we find the evidence supports the jury’s verdict that Mrs. Coleman possessed the Falcon Road property for a period of ten years and in good faith.

Estoppel

Mrs. Coleman, as an alternative argument, also asserted that plaintiffs, through their actions and inactions prior to the 2008 Act of Sale to a third party, are estopped from asserting an ownership claim to the property. Equitable estoppel is a jurisprudential doctrine whereby a party is precluded from asserting rights against another who has justifiably relied upon that party’s conduct and has “changed his position so that he will suffer injury if the former is allowed to repudiate the conduct.” MB Indus., LLC v. CNA Ins. Co., 11-0303 (La.10/25/11), 74 So.3d 1173, 1180 (quoting Morris v. Friedman, 94-2808 (La.11/27/95), 663 So.2d 19, 25). The doctrine of equitable estoppel is not favored and applies only where a party has made false or misleading representations of fact and the other party justifiably relied on the representation. Id.
At trial, Mrs. Coleman testified that plaintiffs never told her that they had any ownership interest in the property and never took any action to stop the 2008 sale to a third party.[14] Mrs. Coleman further testified that, had she known that the children had any ownership interest in the property, she would never have sold the property or let the title insurance on the property lapse. The jury found that Mrs. Coleman met her burden of proof that plaintiffs are estopped from asserting their ownership claim to the Falcon Road property.
|1sOn appeal, plaintiffs argue that the doctrine of estoppel cannot apply in this case — where they contend their claim to assert ownership has not yet prescribed— and that Mrs. Coleman further failed to prove the elements of estoppel at trial. First, we find that plaintiffs failed to raise this argument before the trial court and further failed to object to the application of the equitable estoppel doctrine in this case. The record reflects that, prior to trial, plaintiffs failed to object to any jury interrogatory regarding equitable estoppel. We therefore find that plaintiffs have failed to preserve for appellate review the issue of whether the doctrine of equitable estoppel could apply in this case. Further, because we find that Mrs. Coleman acquired the Falcon Road property by ten-year acquisitive prescription, as discussed above, plaintiffs’ assignment of error concerning the doctrine of equitable estoppel is moot.
Accordingly, for the reasons provided herein, we affirm the trial court’s judgment in all respects related to Mrs. Coleman’s acquisition of full ownership of the Falcon Road property through ten-year acquisitive prescription.

*1045
The Smith Barney Account

Plaintiff, William B. Coleman, III, as executor of Mr. Coleman’s estate, also sought reimbursement from Mrs. Coleman for funds he contends were inadvertently distributed to Mrs. Coleman following Mr. Coleman’s death from his father’s separate brokerage account (the Smith Barney account).[15] Plaintiff argues that the Smith Barney account was opened in the 1970s, prior to Mr. and Mrs. Coleman’s marriage, and that, as a matter of practice, his father deposited and kept his separate funds in that account. Plaintiff therefore argues that the account is Mr. |16Coleman’s separate property and that the estate should be entitled to reimbursement for the funds inadvertently distributed to Mrs. Coleman.
At trial, plaintiff submitted to the jury the Smith Barney account’s balance statements. Although plaintiff claims Mr. Coleman opened the Smith Barney account in the 1970s, plaintiff could not produce any balance statements prior to May 29, 2000. The Smith Barney account balance on that date was $605,000.00. At this time, Mr. and Mrs. Coleman had been married for nearly 25 years. For the following reasons, we find that the Smith Barney account is presumed to be a community property account and that the jury’s finding that the estate-plaintiff failed to meet its burden to prove the separate nature of the account’s funds is not manifestly erroneous.
There is a presumption that property acquired or in the possession of a spouse during the marriage is community property. La. C.C. art. 2340; In re Succession of Firmin, 09-0411 (La.App. 4 Cir. 4/21/10), 38 So.3d 445, 450, writ denied sub nom., Succession of Firmin, 10-1176 (La.9/17/10), 45 So.3d 1046. This presumption is rebuttable if a spouse can prove, by a preponderance of the evidence, the separate nature of funds or property brought into the community. Talbot v. Talbot, 03-0814 (La.12/12/03), 864 So.2d 590, 600. When the separate property is commingled, the issue of the separate nature of the property is called into question by the very act of commingling the property. Id. The Louisiana Supreme Court has stated that, “once the spouse allows those separate funds to be commingled with community funds, the spouse still must meet the burden of proof by a preponderance of the evidence to demonstrate the separate ownership of property....” Id. at 603. Proof by a preponderance of the evidence is defined as taking the evidence as a whole, the fact to be proved is more probably than not. Boxie v. Smith-Ruffin, 07-264 (La.App. 5 Cir. 2/6/08), 979 So.2d 539, 545.
117The burden of overcoming the presumption of community rests with the party asserting that the property is separate. Id. A trial court’s findings regarding the nature of the property as community or separate is a factual determination subject to manifest error review. Ross v. Ross, 02-2984 (La.10/21/03), 857 So.2d 384, 395.
To support its position that the Smith Barney account is Mr. Coleman’s separate property, plaintiff presented the testimony of Mr. John Theriot. Mr. Theriot’s testimony reflects that he is the CPA for the William B. Coleman Company, Inc. and has handled the company’s finances for approximately thirty years. Mr. Theriot testified that he earns approximately $25,- *1046 000.00-$30,000.00 each year for his work performed for the company, and that he would like to continue to perform such work for the company. Mr. Theriot further testified that he received approximately $30,000.00-$40,000.00 for the work that he has performed in connection with this litigation alone.
At trial, Mr. Theriot presented a summary of certain transactions from the Smith Barney account, which he opined represented Mr. Coleman’s separate property. Included in those transactions was a $194,699.88 check written to Mr. Coleman that Mr. Theriot traced to Mr. Coleman’s inheritance from his sibling’s estate. The evidence showed, however, that the check was first deposited into Mr. Coleman’s checking account, which Mr. Theriot agreed would be considered a community account, and that subsequently, Mr. Coleman transferred only the amount of $87,600.00 to the Smith Barney account. Mr. Theriot further testified to securities transferred from Jimmy Coleman’s account that he testified could also be traced to Mr. Coleman’s inheritance from his sibling’s estate. On cross-examination,18 however, Mr. Theriot admitted that he could not specifically identify all securities as related to Mr. Coleman’s inheritance from his sister’s estate.[16]
Mr. Theriot testified regarding other various transactions — transferring funds from Jimmy Coleman’s account to Mr. Coleman’s Smith Barney account — that appear on the account statements, which Mr. Theriot found to be Mr. Coleman’s separate property. On cross examination, however, Mr. Theriot stated that Jimmy Coleman, the family attorney, would have been familiar with Mr. Coleman’s use of the Smith Barney account. He further testified that either Jimmy Coleman or someone with his law firm would have been the individual to advise William Coleman, III, as executor of Mr. Coleman’s estate, to distribute $547,000.00 to Mrs. Coleman.[17]
Mr. Theriot testified that 95% of the activity of the Smith Barney account after the year 2000 would be considered Mr. Coleman’s separate property. On cross-examination, however, Mr. Theriot conceded that his review of the account only accounted for 25% of the time-period that the account had allegedly been opened. Mr. Theriot’s analysis concluded that Mrs. Coleman owed Mr. Coleman’s estate reimbursement in the amount of $416,845.00.[18]
*1047 Plaintiff argues that the jury erred in not accepting Mr. Theriot’s testimony because it was uncontroverted by Mrs. Coleman at trial and, thus, should be accepted as true. “A trier of fact may evaluate expert testimony by the same 1 ^principles as apply to other witnesses; it has great discretion to accept or reject expert or lay opinions.” Lopez v. Wal-Mart Stores, Inc., 94-2059 (La.App. 4 Cir. 8/13/97), 700 So.2d 215, 219, writ denied, 97-2522 (La.12/19/97), 706 So.2d 457. While uncon-tradicted expert testimony should be accepted as true, it is not binding on the fact-finder if circumstances in the record “cast suspicion on the reliability of that testimony.” Mathews v. Dousay, 96-858 (La.App. 3 Cir. 1/15/97), 689 So.2d 503, 510; see also Boxie v. Smith-Ruffin, 07-264 (La.App. 5 Cir. 2/6/08), 979 So.2d 539, 545.
We find that Mrs. Coleman presented evidence sufficient to cast suspicion on the reliability of Mr. Theriot’s testimony. On cross-examination, Mr. Theriot testified that he has worked with the William B. Coleman Company, Inc. and William B. Coleman, III, individually, for a period of 30 years and that he has received $30,-000.00-$40,000.00 for his work performed in relation to this litigation alone. He further testified that he receives approximately $25,000.00-$30,000.00 each year for work performed with the company and that he would like to continue working for the company. Mrs. Coleman presented testimony to show the potential for bias due to Mr. Theriot’s past, present, and anticipated future financial relationship with the William B. Coleman Company, Inc. and plaintiff William B. Coleman, III, individually. Further, Mr. Theriot opined that the initial known balance of $605,000.00 was Mr. Coleman’s separate property, with no evidentiary basis for such assumption or opinion.
Upon review of the record, including Mr. Theriot’s expert testimony, we find the jury was not manifestly erroneous in its determination that the plaintiff-estate failed to meet its burden to rebut the community presumption and failed to present sufficient evidence to trace with reasonable certainty any separate funds commingled into the community Smith Barney account. We therefore affirm the Lptrial court’s judgment denying the estate-plaintiffs claim for reimbursement of funds previously distributed to Mrs. Coleman from the Smith Barney account.

Alternative Argument for Reimbursement

William B. Coleman, III, as executor of Mr. Coleman’s estate, asserts an alternative claim that if the Smith Barney account is deemed community and the Falcon Road property is deemed Mrs. Coleman’s separate property, then Mr. Coleman’s estate is entitled to reimbursement for the insurance proceeds and community funds used to repair the Falcon Road property following Hurricane Katrina pursuant to La. C.C. art. 2366.[19]
The evidence presented at trial demonstrates that the Falcon Road property sustained significant damage as a result of Hurricane Katrina and that repairs to the home were necessary to render the house livable for Mr. and Mrs. Coleman. Plaintiff argues that the insurance policies in *1048 suring the home were in Mr. Coleman’s name alone and that insurance proceeds, and other community funds, were used to repair and benefit the Falcon Road property following Hurricane Katrina.[20] The estate claims that it is entitled to reimbursement for Mr. Coleman’s half of the insurance proceeds — allegedly purchased with community funds[21] — and other community funds used to benefit Mrs. Coleman’s separate property.
We find that the record reflects that the repairs to the Falcon Road property were performed to maintain the livability of the matrimonial home. Thus, Mr. 121 Coleman’s estate is not entitled to reimbursement of those funds. See Cook v. Cook, 457 So.2d 235 (La.App. 3rd Cir. 1984); see also La. C.C. art. 2363.

CONCLUSION

Accordingly, for the reasons provided herein, the judgment of the trial court is hereby affirmed.

AFFIRMED.

. The matters were subsequently consolidated.

. Plaintiffs moved for a judgment notwithstanding the verdict and/or a motion for new trial on the issues raised in this appeal, which the trial court denied.

. The evidence presented at trial further reflects that plaintiffs each unconditionally accepted their mother’s succession in the Twenty-Fourth Judicial District Court. Plaintiffs, however, assert that no evidence proves that each plaintiff viewed the detailed descriptive list in connection with Stella Coleman's succession.

.The evidence presented at trial reflects that the 1982 Act of Sale was recorded in the conveyance records for Jefferson Parish. However, the Act of Donation was never recorded in the public records. At trial, Mrs. Coleman presented the expert testimony of real estate attorney Rader Jackson to testify to the standard or common practices of real estate attorneys in the 1980s. Mr. Jackson testified that it was common practice in 1982 for a real estate transaction to involve an act of sale followed immediately by an act of donation and, while the act of sale would be filed in the public records, the act of donation was typically not recorded.

. Mrs. Coleman also asserted that she acquired the property through thirty-year acquisitive prescription. The jury found that Mrs. Coleman failed to prove that she possessed the property for a period of thirty years. Mrs. Coleman has not appealed that portion of the jury verdict and that issue is not before this Court.

. The elements of possession and a thing susceptible by prescription are not disputed in this case.

. No party sought supervisory review of the trial court’s judgment finding the 1971 transfer to be a simulated sale and neither party raises this issue on appeal. Accordingly, we *1040 do not address the merit of that judgment in this appeal.

. Mrs. Coleman introduced into evidence a copy of the 2008 sale of the Falcon Road property to a third-party. The 2008 Act of Sale contained language identical to the 1982 Act of Sale plaintiffs now challenge (the 2008 sale provided that Mrs. Coleman transferred "all the rights ... which the vendor has or may have....”).

. La. R.S. 9:5647(A) provides:
Any action to set aside a document or instrument on the ground that the party executing the document or instrument under authority of a power of attorney was without authority to do so, or that the power of attorney was not valid, is prescribed by five years, beginning from the date on which the document or instrument is recorded in the conveyance records, or the mortgage records if appropriate. Nothing contained in this Section shall be construed to limit or prescribe any action or proceeding which may arise between a principal and the person acting under authority of a power of attorney.

. Nevertheless, the Louisiana Supreme Court subsequently reversed the Fourth Circuit’s decision in In re Succession of Samuel, finding that the court improperly considered the prescriptive period under La. R.S. 9:5647. In remanding the case to the Fourth Circuit, the Louisiana Supreme Court instructed, "[t]he decision of the appellate court is reversed; this case is remanded to the court of appeal for consideration of the trial court’s judgment in light of all relevant issues of fact and law contained in the record.” In re Succession of Samuel, 12-1707 (La. 12/14/12), 104 So.3d 415. We therefore find that, given the Louisiana Supreme Court’s reversal of the Fourth Circuit’s decision, the Succession of Samuel case is neither controlling nor persuasive to the Court.

. The Second Circuit remanded the case to allow the plaintiff to amend the petition in accordance with La. C.C.P. art. 934.

. The Taylor case does not state whether the Judgment of Possession discussed was filed in the conveyance records.

. Jimmy Coleman died before plaintiffs filed the instant suit.

. The record reflects that plaintiffs knew that Mrs. Coleman had placed the Falcon Road property for sale with a realtor prior to the date of sale.

. The evidence presented at trial reflects that William Coleman, III, as executor of his father’s estate, instructed a representative of Smith Barney to transfer $547,271.00 from the Smith Barney account at issue to Mrs. Coleman.

. Additionally, a check, dated September 2, 1976, in the amount of $400,000.00 was introduced into evidence that Mr. Theriot testified was a check related to Mr. Coleman’s separate property interest in The Downtown Howard Johnson’s company. No documentary evidence, however, was introduced to prove that the $400,000.00 was in fact ever deposited into the Smith Barney account.

. Over plaintiffs’ objection, a draft of a detailed descriptive list in connection with Mr. Coleman’s succession was introduced into evidence. The draft listed stocks and other property as Mr. Coleman’s separate property. The draft, however, listed the Smith Barney account as a community property account. Plaintiff William B. Coleman, III testified that he did not draft nor approve this descriptive list and that it incorrectly classifies the Smith Barney account as community. Neither party could verify who prepared this descriptive list draft but William Coleman, III testified that it would have been someone preparing documents in connection with his father’s estate.

.Further, in his calculations, Mr. Theriot charged or deducted $77,000.00 from any funds Mrs. Coleman may be entitled as a result of $154,000.00 that Mr. Coleman allegedly borrowed from the William B. Coleman Company, Inc. during the community regime. However, no promissory note or other evidence of this loan was introduced at trial.

. La. C.C. art. 2366, in part, provides:
If community property has been used during the existence of the community property regime or former community property has been used thereafter for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled to reimbursement for one-half of the amount or value that the community property had at the time it was used.

. We find that Mrs. Coleman may have argued that the insurance proceeds were in fact her separate properly as they insure the Falcon Road home, determined to be her separate property. See Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (1956), rev’d. on other grounds by Fowler v. Fowler, 03-0590 (La.12/12/03), 861 So.2d 181; Trahan v. Trahan, 387 So.2d 35 (La.App. 3rd Cir.1980). However, the parties failed to introduce the actual insurance policies into evidence and we are thus unable to determine with certainty who in fact the policies list as the named insured(s) or the insured property address.

. We further find that the estate could have asserted a claim for reimbursement of the insurance premiums paid, if in fact paid with community funds. However, the plaintiff-estate failed to introduce any evidence concerning the premiums paid in connection with the insurance policies.