NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

14-235

JUDY JOHNSON VIDRINE

VERSUS

ROBERT BLAKE VIDRINE

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 70011-A
HONORABLE H. WARD FONTENOT, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and John E. Conery, Judges.

AFFIRMED.

**Kathy Fontenot-Meyers**
**Post Office Drawer F**
**Ville Platte, Louisiana 70586**
**(337) 363-3804**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Robert Blake Vidrine**

**M. Robert Voitier, Jr.**
**M. Robert Voitier, Jr. (APLC)**
**Post Office Box 90108**
**Lafayette, Louisiana 70509**
**(337) 354-2442**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Judy Johnson Vidrine**

**CONERY, Judge.**

Robert Blake Vidrine (Mr. Vidrine) appeals the trial court's ruling partitioning the community property accumulated during his marriage to Judy Johnson Vidrine (Ms. Johnson).[1] For the following reasons, we affirm.

## PROCEDURAL HISTORY

Trial of this community property partition suit was conducted over a five-day period beginning February 13, 2013. After hearing all the evidence and the receipt and review of post-trial memoranda, the trial court ruled in favor of Ms. Johnson on the issues in dispute and assigned extensive and well-written reasons for judgment (Reasons).

The trial court's Reasons were delivered in outline form and included "the identification of assets, valuation of assets and liabilities, the allocation of property and matters raised in traverses." Mr. Vidrine timely appealed only the trial court's rulings involving the amount of cash taken by Ms. Johnson from the marital home, the classification of both cash and certificates of deposit (CDs) as community property, and the application of La.Civ.Code art. 2366. We will address the facts pertaining to each of Mr. Vidrine's assignments of error separately below.

## ERRORS ON APPEAL

The three errors raised by Mr. Vidrine on appeal are listed as "Issues Presented" in his briefing to the court:

1. The trial court erred in failing to order Judy Johnson to return the cash money she removed from the marital domicile.

2. The trial court erred in its retroactive application of La. C.C. Article 2366 following the 2009 revision.

---

[1] Ms. Johnson was granted permission to withdraw her answer to appeal by this court on May 2, 2013.

3. The trial court erred in finding that cash and certificates of deposit possessed by Robert Blake Vidrine were community property.

## LAW AND ANALYSIS

### *Standard of Review*

In the absence of manifest error or unless it is clearly wrong, an appellate court may not set aside a trial court's findings of fact. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The trial court's determination of whether property is community or separate is a finding of fact. *Young v. Young*, 06-77 (La.App. 3 Cir. 5/31/06), 931 So.2d 541.

In *Ross v. Ross*, 02-2984, p. 9 (La. 10/21/03), 857 So.2d 384, 390, the supreme court, in its analysis of the regime of acquets and gains, instructed:

> Property acquired by a spouse prior to the establishment of the community property regime is separate property. La. C.C. art. 2341. However, the natural and civil fruits of separate property produced during the existence of the community property regime are community unless a spouse reserves them as his separate property in a declaration made by authentic act or an act under private signature duly acknowledged. La. C.C. art. 2339.

> The Code also provides that things in the possession of a spouse during the existence of a regime of acquets and gains are presumed to be community. La. C.C. art. 2340. However, either spouse may rebut this presumption. La. C.C. art. 2340. The spouse seeking to rebut the presumption bears the burden of proving that the property is separate in nature. *Knighten v. Knighten,* 00-1662 (La.App. 1 Cir. 9/28/01), 809 So.2d 324, *writ denied,* 01-2846 (La.1/4/02), 805 So.2d 207.

In *Talbot v. Talbot*, 03-814 (La.12/12/03), 864 So.2d 590, the supreme court established that the preponderance of evidence standard was to be utilized to rebut the presumption of community and further provided a framework for the trial court in its application. Although the supreme court did not specifically cite any authority for its position, it in effect based its holding on the following:

2

(i) When the proof required to prove the separate nature of property is difficult to obtain because of the passage of time, or similar circumstances out of the control of the parties, the trial court has discretion to permit other sources of proof, including parol evidence, (ii) when the spouse opposing classification of property as separate fails to introduce any evidence in opposition, a *prima facie* showing by the party seeking separate classification is sufficient to support a trial court finding of separate property, and (iii) when separate and community property are commingled, even absent opposition by the spouse opposing separate classification, strict tracing of the property [is] used.

Carroll and Moreno, 16 La.Civ.L.Treatise, Matrimonial Regimes §4.8, ___ (3 ed.).

### *Assignment of Error One - Amount of Cash Removed from the Safe*

In its Reasons, the trial court focused on the central issue in this case, the alleged unlawful removal by Ms. Johnson of a large amount of cash from the portable safe in the home:

> During the marriage, the couple resided in a house located at 9996 Veteran's Memorial Highway, Ville Platte, Louisiana, which was Defendant's separate property. In the house there were four portable safes, reinforced metal containers. The safes were used to store currency and important papers. A major issue in this case revolved around what was in the safes at the time of the divorce. Both parties contend that there was cash money in the safes but there is no agreement as to the amount, nor as to what happened to the cash. Neither is there any agreement as to the source of the funds. The court will make a determination of the issues on the evidence, or lack thereof, produced at the trial.

The trial court heard testimony relating to the amount and origin of the cash in the attic safe or firebox from the parties, competing expert Certified Public Accountants, and employees of Mr. Vidrine's pharmacy businesses. The trial court also received documentary evidence consisting of bands, envelopes, and register tapes identified as having originated from Mr. Vidrine's pharmacy businesses, allegedly used to bind or store the cash allegedly removed by Ms. Johnson in 2008.

3

The estimates of the amount of cash and the number of safes in the home given by Mr. Vidrine in both his testimony at trial and in deposition varied widely. This was also true of his testimony concerning if and when he ever counted the cash he kept in the safes, which he allegedly used to finance his business ventures. The trial court summarized Mr. Vidrine's claims in its Reasons:

> It was the testimony of the Defendant that at the time of the divorce, two of the safes were on the ground floor and were empty. At trial, he testified that one in the attic had only business records, and one, which he referred to as the "firebox" contained money. This differs from his earlier deposition in which he claimed that both had money.

> Defendant explained that he kept money in a cash form to finance his business ventures by way of loans. Robert first testified that he had not counted the money, but later said that he did, but did not say when. Although he did not have a system for keeping a running total, it was his estimate that the firebox contained EIGHT HUNDRED THOUSAND ($800,000) DOLLARS on the day that it was emptied by the Plaintiff. In his pre-trial deposition, he said that the other safe maintained a like amount.

Ms. Johnson testified that she had never counted the contents of the firebox, but she knew it contained large amounts of cash. During the marriage she assisted Mr. Vidrine in placing the money in the "firebox." Her estimate of the amount of cash present was "'Tens of thousands' of dollars."

Ms. Johnson readily admitted to taking the money from one safe or "firebox" pictured in an exhibit admitted at trial. The cash in the safe was divided into groups with the aforementioned bands, envelopes, and register tapes from the pharmacy businesses. Ms. Johnson claimed that after removing the cash, she proceeded directly to the office of attorney Wendell Fusilier, engaged his services as her attorney, and paid him a retainer of $9,000.00 from the cash taken from the "firebox."

4

Mr. Fusilier maintained that he did not count the money, but after speaking with Brent Coreil, the District Attorney for Evangeline Parish, he and a private security guard accompanied Ms. Johnson to the Tri Parish Bank and Washington State Bank where she divided the cash and placed it in two separate safety deposit boxes. All testified that the money was not counted until it was subsequently removed from the two safety deposit boxes and deposited in a savings account in the Evangeline Bank.[2] The evidence at trial showed that the amount so deposited totaled $117,247.00.

The trial court ultimately found that despite the testimony of Mr. Vidrine about "huge sums of cash in the safes," no reliable evidence supported his claim. The trial court accepted the testimony of Ms. Johnson that the only amounts taken from the "firebox," in addition to the funds deposited, were the $9,000.00 for her attorney and $13,000.00 for her personal use. She claimed she paid $10,000.00 for a trailer and used $3,000.00 to set up a new household.

In ruling on this issue, the trial court found the conflicting testimony of the opposing Certified Public Accountant experts to be of "no help." Mr. Vidrine testified to an amount of money in the firebox that could not be accounted for, including "wild estimates, some over a million dollars," which were unsubstantiated. The trial court finally found, "No court can be expected to divide up 'ghost' money. The only certainty about the cash money residing in the safes is based on the sum that is presently deposited in a savings account in the Evangeline Bank."

---

[2] At trial, counsel stipulated that the money from the safety deposit boxes in both the Tri Parish Bank and the Washington State Bank was deposited in the savings account in the Evangeline Bank in account number 8674780.

Based on our review of the record before us and the trial court's credibility determinations, we cannot say that the trial court's ruling that $117,247.00 was the amount of cash in the community of acquets and gains was manifestly erroneous. *Rosell*, 549 So.2d at 844.[3] Mr. Vidrine's first assignment of error is without merit.

### Assignment of Error Three - Classification of the Cash and Certificates of Deposit as Community Property

#### Cash

The trial court classified the entire amount of cash from the firebox as community property based on the lack of documentation from Mr. Vidrine to support his claims "that the cash which he kept in the firebox was accumulated before his marriage" to Ms. Johnson in 2002, "or was generated from separate property sources."

Mr. Vidrine testified at length about his separate business ventures, including sales and leases of separate property and a settlement from his previous marriage, as well as his practice of keeping cash money to "lend it to his business ventures." However, the record reflects that Mr. Vidrine was unable to provide any documentation to the trial court to support these business dealings.

In its Reasons, the trial court specifically found:

> Apparently, Plaintiff kept a record of all these transactions in his head because no documentation of loans, repayments, or any separate accounting was offered into evidence. However, other evidence is incontrovertible that proceeds from his businesses during the marriage were being converted into cash and stored in the firebox. Exhibit 9-11 is a collection of money packet straps and adding machine tapes which accompanied the cash from the firebox. The dates on these

---

[3] The supreme court stated in *Rosell*, 549 So.2d at 844:

> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

indicate that the business proceeds being stored in the firebox were generated during the existence of the community property regime.

The trial court's ruling is supported by Gwen Guillory, Mr. Vidrine's office manager for thirty-three years. Her testimony, as well as the exhibits introduced in connection with her testimony, paint a picture of how cash from the pharmacies made its way to the "firebox" in the attic of the Vidrine home.

The trial court cited both La.Civ.Code arts. 2338[4] and 2339[5] and found that "although, Robert's pharmacies were his separate property, the profits and earnings which he made working as a pharmacist were not."

The trial court held that the cash in the safes or "firebox" had been comingled to the extent the entire amount must be classified as community property and stated, "Furthermore, the lack of any accounting method in the

---

[4] Louisiana Civil Code Article 2338 provides:

> The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.

[5] Louisiana Civil Code Article 2339 provides :

> The natural and civil fruits of the separate property of a spouse, minerals produced from or attributable to a separate asset, and bonuses, delay rentals, royalties, and shut-in payments arising from mineral leases are community property. Nevertheless, a spouse may reserve them as his separate property as provided in this Article.

> A spouse may reserve them as his separate property by a declaration made in an authentic act or in an act under private signature duly acknowledged. A copy of the declaration shall be provided to the other spouse prior to filing of the declaration.

> As to the fruits and revenues of immovables, the declaration is effective when a copy is provided to the other spouse and the declaration is filed for registry in the conveyance records of the parish in which the immovable property is located. As to fruits of movables, the declaration is effective when a copy is provided to the other spouse and the declaration is filed for registry in the conveyance records of the parish in which the declarant is domiciled.

7

indiscriminate use of cash from the safes constituted the type of commingling which operates to classify the entirety as community property." *Talbot*, 864 So.2d 590.[6]

Mr. Vidrine further testified that he placed an undetermined amount of casino winnings in the "firebox" along with his cash from his business profits. The trial court cited this practice as an example of the cavalier manner in which Mr. Vidrine treated the cash in the "firebox." The frustration of the trial court in seeking to classify the cash from the "firebox" is evident in its Reasons:

> To underscore the lack of any control in the ingress and egress of cash, there is this example from Defendant's testimony. He testified at trial that there was at least EIGHT HUNDRED THOUSAND ($800,000) DOLLARS in the firebox. At one time he said that he had counted it - at another time he said that he had not. As to the other safe, he testified in his deposition that he thought that it contained an equal amount, but later said that he was not sure.

Based on the record and the findings of the trial court, we find no manifest error in the trial court's determination that the $117, 247.00 in cash taken from the "firebox" was properly classified as a community asset. This portion of Mr. Vidrine's assignment of error three is without merit.

***Classification of the Certificates of Deposit As Community Assets***

---

[6] *Talbot*, 864 So.2d at 602-03, provides:

> The separate nature of the property commingled must be identifiable or differentiated, or else it loses its separate nature and falls into the community regime. When the separate property is commingled, the issue of the separate nature of the property is called into question by the very act of commingling the property. Thus we find once the spouse allows those separate funds to be commingled with community funds, the spouse still must meet the burden of proof by a preponderance of the evidence to demonstrate the separate ownership of property purchased with the commingled funds, but to satisfy this burden the spouse must trace with sufficient certainty the separate nature of the funds used to purchase the property. *See Curtis,* 403 So.2d at 59-60; *Graves,* 111 So.2d at 755. Only where separate funds can be traced with sufficient certainty will a spouse be able to satisfy his or her burden of proof. *Curtis,* 403 So.2d at 59-60; *Graves,* 111 So.2d at 755.

Mr. Vidrine urges error by the trial court in its determination that the CDs in question were part of the community regime. He claims that the CDs at Guaranty Bank were purchased prior to his marriage to Ms. Johnson in 2002, and were only rolled over or renewed during the duration of the community regime, which terminated in 2008.

The trial court found that the three CDs in Guaranty Bank and in Mr. Vidrine's possession were "purchased during the existence of the community property regime."

> There was no competent evidence produced to overcome the presumption that the purchases were made with community or comingled funds. Defendant testified that every CD had been a renewal of a CD owned before the marriage, but he offered no documentation. It would have been a simple matter of producing bank records to substantiate his claim.

The supreme court was faced with a similar factual scenario in *Talbot*, 864 So.2d at 603, and found that "Mrs. Talbot testified that when the original CDs reached maturity she allowed the CDs to 'roll over' into new CDs." By engaging in this practice, Mrs. Talbot "effectively comingled the principle of the CDs and the interest accrued on the CDs, which is community property . . . . Mrs. Talbot is now required to untangle the web of community and separate funds she created to establish the separate ownership of the CDs in question." The ruling made it clear that the party seeking to claim separate property has the burden of proof and is required to prove the separate nature of the property by a preponderance of the evidence. *Id.*

The same analysis holds true in this case. Mr. Vidrine failed to produce the bank records that would have supported his claim that the three CDs were his separate property. Thus, he was unable to carry his burden of proof to rebut the

presumption that the CDs were part of the community regime. Therefore, this portion of error three is also without merit.

***Assignment of Error Two:***

Mr. Vidrine contends that the trial court erred in retroactively applying the 2009 version of La.Civ.Code art. 2366 to determine the amount of reimbursement owed to the community for improvements made to Mr. Vidrine's separate property, the marital residence at 9996 Veterans Memorial Highway, Ville Platte, Louisiana.

In its Reasons, the trial court properly cited in its entirety the 2008 version of La.Civ.Code art. 2366, which was last amended effective January 1, 1980, and in effect on July 28, 2008, the date of the termination of the community of acquets and gains between Mr. Vidrine and Ms. Johnson:

> If community property has been used for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to **one-half of the amount or value that the community property had at the time it was used.**
>
> Buildings, other constructions permanently attached to the ground, and plantings made on the separate property of a spouse with community assets belong to the owner of the ground. Upon termination of the community, the other spouse is entitled to one-half of the amount or value that the community assets had at the time they were used.

(Emphasis added.)

The 2009 version of La.Civ.Code art. 2366 (emphasis added), effective August 15, 2009, states in pertinent part:

> If community property has been used during the existence of the community property regime or former community property has been used thereafter for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled to reimbursement for **one-half of the amount or value that the community property had at the time it was used.**

10

The pertinent portions of both the 2008 and 2009 version of La.Civ.Code art. 2366 are identical. Both provide that the spouse whose community has been used in this case to improve the separate property of the other spouse, is to be reimbursed **one-half of the amount or value that the community property had at the time it was used.** The fact that the trial court incorrectly quoted the 2008 version of Article 2366, which is identical in wording to the 2009 version of the article, does not support Mr. Vidrine's argument.

Mr. Vidrine does not object to the amount determined by the trial court as his required reimbursement to the community. He does claim that no evidence of the property's original value was introduced at trial. Therefore, there was no way for the trial court to determine whether the property was "enhanced" by the repairs and enhancements made during the marriage and thus Ms. Johnson's claim for reimbursement should have been denied.

The trial court ruled that $126,523.66 was the amount of the total reimbursement owed by Mr. Vidrine to the community pursuant to the 2008 version of La.Civ.Code art. 2366. The trial court considered documentation entitled, "Payments from Blake's Family Pharmacy for Home Improvement," attached to the trial court's Reasons as Appendix A, which totaled $41,323.66; "Cash Payments for Labor on Robert Blake Vidrine's Separate Property," attached to the trial court's Reasons as Appendix B, which totaled $54,200; and the stipulated price of $31,000, the "turnkey price" of the addition of a swimming pool to Mr. Vidrine's home.

Pursuant to the clear wording of the 2008 version of Article 2366, the trial court correctly determined the "amount" of reimbursement owed by Mr. Vidrine to the community for repairs and improvements to his separate property during the

11

existence of the community regime was $126,523.66, based on the specific amounts paid as evidenced in Appendix A and B and the stipulation of the cost of the swimming pool. Thus, the trial court correctly applied the 2008 version of La.Civ.Code art. 2366 in its Reasons to determine the amount owed to the community for improvements to Mr. Vidrine's separate property. This assignment of error is also without merit.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment in its entirety. All costs of this appeal are assessed against Robert Blake Vidrine.

**AFFIRMED.**

This opinion is **not designated for publication**. Uniform Rules—Courts of Appeal, Rule 2–16.3.